# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### WEST PALM BEACH DIVISION

CONTIGUITY LLC

                Plaintiff,

    v.

JENOPTIK NORTH AMERICA, INC.
AND JENOPTIK OPTICAL SYSTEMS, LLC

            Defendants.

Case No. 9:23-cv-80233

**DEFENDANTS JENOPTIK NORTH AMERICA, INC.'S AND JENOPTIK OPITCAL SYSTEMS, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMSS**

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION ................................................................................................................ 1

II. LEGAL STANDARDS ...................................................................................................... 3

   A.    Motion to Dismiss Under Rule 12(b)(6) ...................................................................... 3

   B.    Invalidity Under 35 U.S.C. § 101 ................................................................................ 4

   C.    Dismissal Under § 101 at the Pleading Stage Is Permissible ...................................... 5

III. ARGUMENT ................................................................................................................... 6

   A.    The '084 Patent Is Invalid and Unenforceable Under § 101 ..................................... 6

        i.    *Alice* Step 1: The '840 Patent Claims Are Directed to an Abstract Idea ............... 6

        ii.    *Alice* Step 2: The '840 Patent Claims Do Not Add Inventive Concepts ............. 11

   B.    Contiguity's Direct Infringement Allegations Fail to State a Claim............................ 14

        i.    The Complaint Fails to Plausibly Allege Infringement of Every Element of Claim 1 ................................................................................................................. 15

        ii.    The Complaint Fails to Allege Any Factual Basis for Infringement of Claims 2-16 ......................................................................................................... 17

   C.    Contiguity's Induced Infringement Allegations Fail to State a Claim.......................... 18

        i.    The Complaint Fails to Allege Any Factual Basis for Induced Infringement Because There is No Direct Infringement ............................................................ 18

        ii.    The Complaint Fails to Allege That Jenoptik Had the Requisite Pre-Suit Knowledge of the '084 Patent for Induced Infringement ...................... 18

IV. CONCLUSION................................................................................................................. 20

## **TABLE OF AUTHORITIES**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
    882 F.3d 1121 (Fed. Cir. 2018) ............................................................... 5, 6

*Alice Corporation v. CLS Bank, International*,
    573 U.S. 208 (2014) ................................................................. 1, 4, 11, 13

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
    841 F.3d 1288 (Fed. Cir. 2016) ................................................................. 8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................ 2, 3

*Atlas IP, LLC v. JEA*,
    No. 17-20243-CIV, 2017 WL 5643312 (S.D. Fla. June 21, 2017) ........................... 15

*Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.)*,
    687 F.3d 1266 (Fed. Cir. 2012) ................................................................. 7

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
    827 F.3d 1341 (Fed. Cir. 2016) ............................................................... 11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................ 2, 3

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018) ................................................................. 5

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
    935 F.3d 1341 (Fed. Cir. 2019) ............................................................... 8, 9

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    920 F.3d 759 (Fed. Cir. 2019) ................................................................. 9

*Content Extraction & Transmission LLC v. Wells Fargo Bank*,
    776 F.3d 1343 (Fed. Cir. 2014) ............................................................... 5, 7

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011) ................................................................. 8

*D3D Techs., Inc. v. Microsoft Corp.*,
    No. 6:20-CV-1699-PGB-DCI, 2021 WL 2194601 (M.D. Fla. Mar. 22, 2021) ................... 20

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ........................................................... passim

*Enfish LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ......................................................................... 5

*Genetic Techs. Ltd. v. Merial L.L.C.*,
  818 F.3d 1369 (Fed. Cir. 2016) ......................................................................... 5

*Glob. Tech. LED, LLC v. Every Watt Matters, LLC*,
  No. 15-cv-61933, 2016 WL 6682015 (S.D. Fla. May 19, 2016)............................ 15

*Global-Tech Appliances, Inc. v. SEB SA*,
  563 U.S. 754 (2011)............................................................................... 18, 19

*Gottschalk v. Benson*,
  409 U.S. 63 (1972).......................................................................................... 13

*Hawk Tech. Sys., LLC v. Castle Retail, LLC*,
  60 F.4th 1349 (Fed. Cir. 2023) ...................................................................... 8, 13

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012) ...................................................................... 18

*In re Mohaparta*,
  No. 2020-1935, 2021 WL 408755 (Fed. Cir. Feb. 5, 2021) ................................. 4

*In re TLI Communs. LLC Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) ..................................................................... 6, 10

*Mayo Collaborative Servs. v. Prometheus Labs.*,
  566 U.S. 66 (2012).................................................................................. 4, 5, 11

*Nalco Co. v. Chem-Mod, LLC*,
  883 F.3d 1337 (Fed. Cir. 2018) ....................................................................... 18

*Orlando Commc'ns LLC v. LG Elecs., Inc.*,
  No. 6:14-CV-1017-ORL-22, 2015 WL 1246500 (M.D. Fla. Mar. 16, 2015) ......... 19

*Parker v. Flook*,
  437 U.S. 584 (1978)........................................................................................ 10

*Randall v. Scott*,
  610 F.3d 701(11th Cir. 2010) ........................................................................... 3

*Raptor, LLC v. Odebrecht Constr., Inc.*,
  No. 17-21509-CIV, 2017 WL 3503399 (S.D. Fla. June 22, 2017)........................ 15

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018) ...................................................................... 4, 5

*SIMO Holdings Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
    983 F.3d 1367 (Fed. Cir. 2021) ................................................................ 15

*Sunrise Techs., Inc. v. Cimcon Lighting, Inc.*,
    219 F. Supp. 3d 260 (D. Mass. 2016) ....................................................... 15

*Thermolife Int'l, LLC v. Vitamin Shoppe, Inc.*,
    No. 0:16-cv-60693-UU, 2016 WL 6678525 (S.D. Fla. June 8, 2016) .............................. 15, 17

*Tranxition, Inc. v. Lenovo (United States) Inc.*,
    664 F. Appx. 968 (Fed. Cir. 2016) .............................................................. 5

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ............................................................. 8, 14

*VPR Brands, LP v. HQDTech USA LLC*,
    No. 21-cv-21678, 2021 WL 5013803 (S.D. Fla. Oct. 28, 2021) ............................... 15

*Werteks Closed Joint Stock Co. v. Vitacost.com, Inc.*,
    No. 16-CV-60695, 2016 WL 5076169 (S.D. Fla. Sept. 20, 2016) ................................... 2, 4, 17

*Wi-Lan USA, Inc. v. Rsch. in Motion Ltd.*,
    No. 12-CV-24349-DMM/DLB, 2013 WL 12092486 (S.D. Fla. June 7, 2013) ....... 3, 18, 19, 20

*WMS Gaming, Inc. v. Int'l Game Tech.*,
    184 F.3d 1339 (Fed. Cir. 1999) ............................................................... 15

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
    528 F. Supp. 3d 247 (D. Del. 2021) .......................................................... 20

## Statutes

35 U.S.C. § 101 .................................................................................. passim

## Rules

Fed. R. Civ. P. 12(b)(6) ......................................................................... 1, 5

## I. INTRODUCTION

Defendants JENOPTIK North America, Inc. and JENOPTIK Optical Systems, LLC (collectively, "Jenoptik") move to dismiss Plaintiff Contiguity, LLC's ("Contiguity") Complaint (Dkt. 1) under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

The Complaint should be dismissed under Rule 12(b)(6) because the sole asserted patent–U.S. Patent No. 8,031,084 ("'084 Patent")–is directed to unpatentable subject matter under 35 U.S.C. § 101. Section 101 of the Patent Act sets forth the requirements for subject matter that is eligible for patenting–it must be "new and useful" and a "process, machine, manufacture, or composition of matter" or "any new and useful improvement thereof." 35 U.S.C. § 101. In the Supreme Court's landmark patent subject matter eligibility decision in *Alice Corporation v. CLS Bank, International*, the Court held that non-inventive abstract ideas fall outside the limits of allowable subject matter. 573 U.S. 208 (2014). The '084 Patent–issued long before *Alice*–fails to claim patentable subject matter under the *Alice* test. The claims of the '084 Patent are directed to the idea of collecting information about vehicles traveling along a road, analyzing the information, and transmitting and displaying certain results of the collection and analysis. The specification of the '084 Patent states as much: "[e]mbodiments of the present invention provide a method, system and computer program product for vehicle speed acquisition and citation." Dkt. 1-1 at 3:16-18. This is a quintessential abstract concept, which, as the '084 Patent acknowledges, can be and historically has been performed manually in the human mind or by a human using pen and paper. *See, e.g.,* Dkt. 1-1 at Col. 1, line 65 – Col. 2, line 17 (admitting that traffic monitoring traditionally performed by "personally observed traffic speeds (typically by helicopter or live-camera feeds)" and ticketing of speeding motorists conventionally involves "the presence of a police officer to actually witness the speeding.").

1

There is no inventive concept in the '084 Patent that transforms the abstract idea into patentable subject matter. For a computer-based concept to be patentable, the claimed concept must improve the computer or system itself, rather than simply automating a fundamental human process such as traffic monitoring or ticketing of speeding motorists. *See Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016). The '084 Patent does not teach any novel means of *how* to accomplish the abstract idea. Rather, the specification teaches that the idea may be completed using conventional computers performing ordinary, generic functions. As such, the '084 Patent is not directed to solving any known problems associated with vehicle speed acquisition and citation; it merely tells the reader to carry out age-old human activities with already understood conventional computerized techniques. Therefore, the '084 Patent is invalid under § 101 and, accordingly, the Complaint should be dismissed.

Furthermore, the Complaint does not meet the pleading standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Complaint does not allege a factual basis for Contiguity's direct infringement claim. The Complaint does not even attempt to allege any factual basis for direct infringement for claims 2-16 of the '084 Patent, and thus, the Complaint should be dismissed with respect to these unspecified claims. *See Werteks Closed Joint Stock Co. v. Vitacost.com, Inc.*, No. 16-CV-60695, 2016 WL 5076169, at *3 (S.D. Fla. Sept. 20, 2016). As for claim 1 of the '084 Patent, Contiguity fails to plausibly allege infringement as to every element of the claim. In particular, Contiguity has not provided (and cannot provide) any factual basis for the allegation that the Exemplary Products "attempt[] to transmit the citation signal to a device of a person associated with the vehicle" as required by claim 1.  Dkt. 1-1 at Col. 8, lines 18-18. In fact, the very evidence cited by Contiguity proves that the Exemplary Products do not meet the last claim element because it states that, for

the Exemplary Products, "[t]he data is transmitted **_only_** to the police or the authorities." Dkt. 1-2 at pg. 10 (emphasis added). Contiguity's direct infringement claim is not plausible and should be dismissed.

Contiguity's induced infringement claim must also be dismissed because Contiguity fails to plead pre-suit knowledge of the '084 Patent and the alleged infringement. The Complaint alleges that "**_[t]he service of this Complaint_** . . . constitutes actual knowledge of infringement as alleged here." Dkt. 1 at ¶ 14 (emphasis added). This Court recognizes that a complaint cannot provide the requisite knowledge for induced infringement—a "[p]laintiff must [] allege that [d]efendants had **_pre-suit_** knowledge of the [patent] to sustain its claim for induced . . . infringement." *Wi-Lan USA, Inc. v. Rsch. in Motion Ltd.*, No. 12-CV-24349-DMM/DLB, 2013 WL 12092486, at \*4 (S.D. Fla. June 7, 2013) (emphasis added). Since the Complaint does not, and cannot, allege the requisite *pre-suit* knowledge, Contiguity's induced infringement claim must be dismissed.

## II. LEGAL STANDARDS

### A. Motion to Dismiss Under Rule 12(b)(6)

Courts may dismiss claims that fail to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 679 (quoting *Twombly*, 550 U.S. at 570). As such, the allegations in a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* And, while a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth–legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010).

Courts dismiss patent infringement claims to the extent they allege infringement of unspecified patent claims without any facts that allow the court to make a reasonable inference

that the defendants have infringed those claims. *See Werteks*, 2016 WL 5076169, at *3 (dismissing complaint as to claims 2 and 3 of the patent when plaintiff only alleged facts for to claim 1).

## B.    Invalidity Under 35 U.S.C. § 101

The Patent Act defines patentable subject matter as "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. However, abstract ideas, as well as laws of nature and natural phenomena, are exceptions to these statutory categories of patentable subject matter because abstract ideas, laws of nature, and natural phenomena are the "building blocks of human ingenuity." *Alice Corp.*, 573 U.S. at 217. The claims of the '084 Patent fall into the "abstract ideas" category, which category embraces "collecting information, analyzing it, and displaying certain results of the collection and analysis." *Elec. Power*, 830 F.3d at 1353.

Courts apply a two-step test to determine whether patent claims are directed to patent-ineligible subject matter. Step one asks whether the claims at issue are directed to a patent ineligible concept, which includes abstract ideas. *Alice*, 134 S. Ct. at 2355. If so, the inquiry proceeds to step two, which asks whether there are additional elements in the claims that "*transform* the nature of the claim into a patent-eligible application," *i.e.*, the "search for an inventive concept." *Alice*, 573 U.S. at 217 (*citing Mayo Collaborative Servs. v. Prometheus Labs.*, 566 U.S. 66, 72, 78-79 (2012)) (emphasis added) (internal quotations omitted).

"The first stage of the *Alice* inquiry looks at the 'focus' of the claims [and] their 'character as a whole.'" *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) (citing cases). As to abstract ideas, "[a] claim does not cease to be abstract for section 101 purposes simply because the claim confines the abstract idea to a particular technological environment in order to effectuate a real-world benefit." *In re Mohaparta*, No. 2020-1935, 2021 WL 408755, at *3 (Fed. Cir. Feb. 5, 2021) (citing cases).

4

The second stage of the inquiry "looks more precisely at what the claim elements add–specifically, whether . . . they identify an 'inventive concept' in the application of the ineligible matter to which . . . the claim is directed." *SAP Am., Inc.*, 898 F.3d at 1167. Claim "elements [that] involve well-understood, routine, and conventional activity . . . do not constitute an inventive concept." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018) (citing *Mayo*, 566 U.S. at 73) (internal quotation marks omitted).

Improving a computer itself is patentable, while using a computer to improve a normal human task is not. *See Elec. Power*, 830 F.3d at 1354-55. To be sufficiently inventive to be worthy of a valid patent, claims implemented on a computer must be "'directed to an *improvement to computer functionality* versus being directed to an abstract idea.'" *Tranxition, Inc. v. Lenovo (U.S.) Inc.*, 664 F. Appx. 968, 971 (Fed. Cir. 2016) (quoting *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)) (emphasis added).

### C.     Dismissal Under § 101 at the Pleading Stage Is Permissible

Courts may properly determine § 101 patentability at the pleading stage, including relative to a Rule 12(b)(6) inquiry. *See Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016) ("We have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion"); *see, e.g., Content Extraction & Transmission LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).

Although the *Alice* step-two determination of whether something is "well-understood, routine, and conventional" is an issue of fact, the Federal Circuit has confirmed that "not every § 101 determination contains genuine disputes over the underlying facts material to the § 101 inquiry." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Rather, when, as here, claims recite only routine computer components for performing conventional computer functionality, no underlying factual disputes exist to prevent a § 101 determination on the

pleadings. *See, e.g., In re TLI Communs. LLC Patent Litig.*, 823 F.3d 607, 613-14 (Fed. Cir. 2016). Likewise, this Court can assess whether the claim elements are well understood, routine, or conventional "based on the sources properly considered on a motion to dismiss, such as the complaint, the patent, and materials subject to judicial notice." *Aatrix Software*, 882 F.3d at 1128.

## III. ARGUMENT

### A.      The '084 Patent Is Invalid and Unenforceable Under § 101

The claims of the '084 Patent are, by any accounting, unpatentable. Under the first step of *Alice*, the '084 Patent's claims are directed to the abstract idea of collecting information, analyzing it, and transmitting and presenting certain results of the collection and analysis.  Under the second step of *Alice*, the '084 Patent's claims do not contain any inventive concept; they merely employ conventional computer technology to automate tasks which are manually performed by humans.

#### i.        *Alice* Step 1: The '840 Patent Claims Are Directed to an Abstract Idea

Claim 1 of the '840 Patent (the only claim Contiguity specifically accused Jenoptik of infringing) recites the following method steps:

> Claim 1. A ***method of*** infraction detection based on vehicle traffic flow data, the method comprising:
>
> ***acquiring*** first imagery of a plurality of vehicles at a first location at a first time;
>
> ***acquiring*** second imagery of a plurality of vehicles at a second location at a second time;
>
> ***identifying*** a first vehicle from the acquired first imagery and the acquired second imagery;
>
> ***determining*** a speed of the first vehicle;
>
> ***generating*** a citation signal when the speed of the first vehicle exceeds a predetermined speed; and
>
> ***attempting to transmit*** the citation signal to a device of a person associated with the vehicle.

Dkt. 1-1 ('084 Patent) at Claim 1 (emphasis added).[1]

The focus of representative claim 1 is a series of steps dealing with handling and managing (though not creating) information; it recites (1) **collecting** information (i.e., "acquiring" first and second imagery), (2) **analyzing** the information (i.e., "identifying" a vehicle and "determining" its speed), and (3) performing a post-solution activity and **presenting** the results (i.e., "generating" and "attempting to transmit" a citation signal). All of these steps collectively reveal that the focus of the claims is directed to an abstract idea. *See Elec. Power*, 830 F.3d at 1353–54 ("**collecting** information, including when limited to particular content (which does not change its character as information), . . . **analyzing** information by steps people go through in their minds, or by mathematical algorithms, without more, . . . [and] merely **presenting** the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation)," . . . "are within the realm of abstract ideas.") (emphasis added) (internal citations and quotations omitted). The Federal Circuit has just recently reiterated that claims "directed to a method of receiving, displaying, converting, storing, and transmitting digital video

---

[1] Although Contiguity's claim chart only identifies independent claim 1 as the Exemplary Claim, in the event that Contiguity tries to assert other independent claims in addition to claim 1, Jenoptik asserts that claim 1 is representative of the remaining two independent claims of the '084 Patent– claims 8 and 15. Although claims 8 an 15 are directed to an "apparatus" and a "system," respectively, both claims relate to determining a speeding infraction/violation using the same five basic steps as recited in claim 1. *See* Dkt. 1-1 at claims 8 and 15. The only additional claim elements recited by claims 8 and 15 include generic computer components, such as "image" or "video capture devices," "memory," and "processors." *Id.* The claims that depend from independent claim 8 (*i.e.*, claims 9-14) and independent claim 15 (*i.e.*, claim 16), generally recite the same or similar limitations to those recited by the dependent claims of claim 1. When, as here, the only difference between claims is the form in which they are drafted, it is appropriate to treat them "as equivalent for purposes of patent eligibility under § 101." *Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.)*, 687 F.3d 1266, 1277 (Fed. Cir. 2012). Since all three independent claims are "substantially similar and linked to the same abstract idea" of collecting information, analyzing it, and displaying certain results of the collection and analysis, they may be analyzed collectively under § 101. *Content Extraction*, 776 F.3d at 1348.

'using result-based functional language'" are patent ineligible. *Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 60 F.4th 1349, 1357 (Fed. Cir. 2023) (quoting *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017)). Thus, like the claims the Federal Circuit found to be abstract in *Electric Power*, the '084 Patent claims are "clearly focused on the combination of those abstract-idea processes . . . not on [] an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Elec. Power,* 830 F.3d at 1354. And though less lengthy, the '084 Patent claims are like the *Electric Power* claims in that they "do not go beyond requiring the collection, analysis, and display of available information in a particular field, stating those functions in general terms, without limiting them to technical means for performing the functions that are arguably an advance over conventional computer and network technology." *Id.* at 1351; *see also, Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1346–47 (Fed. Cir. 2019) (explaining that courts typically examine earlier cases in which a similar or parallel descriptive nature can be seen as part of their abstract idea analysis) (citing *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016)).

Additionally, the Federal Circuit has taught that to assist in determining whether a claim embodies an abstract idea, courts often consider whether the steps "can be performed in the human mind, or by a human using pen and paper." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). The ***analyzing*** information step of the '084 Patent claims (*i.e.*, determining/computing the speed of the vehicle), is a simple equation for calculating speed, based on the collected information, which can plainly be performed in the human mind, or by a human using pen and paper. *See* Dkt. 1-1 at claims 1, 5, 8, 11, 15; *see e.g., id.* at claim 5 ("wherein the

speed of the vehicle is determined based on a difference between the first time and the second time and a distance between the first location and the second location.").[2]

Moreover, the Federal Circuit has instructed that the "directed to" inquiry under *Alice* step one, may "involve looking to the specification to understand the problem facing the inventor and, ultimately, what the patent describes as the invention." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019).[3] The '084 Patent specification describes the invention as "a method and system for detecting and reporting a speeding infraction by a vehicle," confirming that the claims are ***directed to*** the steps of ***collecting*** and ***analyzing*** the vehicle identifying information as well as the vehicle's location and speed, and ***presenting*** it to certain parties or devices–*i.e.*, an abstract idea. Dkt. 1-1 at Col. 2, lines 22–24. Furthermore, the specification identifies two "problems facing the inventor" (1) "Travelers with advance knowledge of congestion along a planned route make alternate routing decisions based upon the nature of traffic flow. . . [but k]nowing the rate of speed of traffic in a congested area, however, requires the traveler to rely upon the estimates of real-time broadcast reports over the radio over [sic] television resulting from ***personally observed traffic speeds*** (typically by helicopter or live camera feed);" and (2) "a need for ticketing speeding motorists without jeopardizing the safety of police and other motorists, and without requiring the presence of ***a police officer to actually witness the speeding***." *Id.* at Col. 1, lines 61–63; Col. 1, line 65 – Col. 2, line 3; and Col. 2, lines 14–17 (emphasis added). Therefore, the written description of the claimed invention not only confirms that the claims are ***directed to***

---

[2] Notably, claim 1 and dependent claim 5 do not even require that "determining a speed of the [] vehicle" be calculated using a computer. *See* Dkt. 1-1 at claims 1, 5.

[3] *See Chamberlain,* 935 F.3d at 1346 ("The specification is helpful in illuminating what a claim is directed to . . .[but] reliance on the specification must always yield to the claim language in identifying that focus.") (quoting *ChargePoint,* 920 F.3d at 766).

the abstract idea of **collecting, analyzing** and **presenting** vehicle-related information, but it also admits that this process can be and historically has been, **performed in the human mind or by a human using pen and paper**. Notably, the specification of the '084 Patent further admits that "the embodiments [of the present invention] reside primarily in combinations of apparatus components and processing steps related to implementing a system and method for managing digital images." *Id*. at Col. 3, lines 30-34. The Federal Circuit has specifically rejected a patent on the "abstract idea of classifying and storing digital images in an organized manner." *TLI Commc'ns LLC*, 823 F.3d at 613. Therefore, the '084 Patent claims are directed to an abstract idea.

Additionally, the analysis step of the claims merely requires performing a basic mathematical calculation to determine the speed of the vehicle (*i.e.*, distance/time = rate). Dkt. 1-1 at claim 5 ("[T]he speed of the vehicle is determined based on a difference between the first time and the second time and a distance between the first location and the second location."); *see also id.* at claims 8 and 15. Once the vehicle speed is determined, a citation signal is generated, "when the speed of the [] vehicle exceeds a predetermined speed." *Id.* at claims 1, 8, and 15. The Supreme Court has rejected the notion that recitation of a practical application (to the extent the claims of the '084 Patent do so) for the calculation could alone make the invention patentable. *See Parker v. Flook,* 437 U.S. 584, 590 (1978) ("The notion that post-solution activity, no matter how conventional or obvious in itself, can transform an unpatentable principle into a patentable process exalts form over substance . . [as any] competent draftsman could attach some form of post-solution activity to almost any mathematical formula."). Thus, no argument about the mathematical formula itself or the practical applicability of the claims of the '084 Patent can rescue them from subject matter ineligibility.

ii.     *Alice* **Step 2: The '840 Patent Claims Do Not Add Inventive Concepts**

Once the Court determines that the claims of the '084 Patent are directed to an abstract idea, it should next analyze the claims under *Alice* step two. The Supreme Court has warned that "[a] claim that recites an abstract idea must include additional features to ensure that the claim is more than a drafting effort designed to monopolize the abstract idea." *Alice* 573 U.S. at 221 (citing *Mayo,* 566 U.S. at 77) (internal quotations omitted). Like in *Electric Power,* the claims of the '084 Patent "do not even require a new source or type of information, or new techniques for analyzing it." 830 F.3d. at 1355 ("Merely requiring the selection and manipulation of information—to provide a 'humanly comprehensible' amount of information useful for users,—by itself does not transform the otherwise-abstract processes of information collection and analysis.").

The Federal Circuit has instructed that the step two inquiry "must turn to any requirements for *how* the desired result is achieved." *Id.*  (emphasis in original). And again, the '084 Patent claims, like *Electric Power,* "do not require any nonconventional computer, network, or display components, or even a 'non-conventional and non-generic arrangement of known, conventional pieces,' but merely call for performance of the claimed information collection, analysis, and display functions 'on a set of generic computer components' and display devices." *Id.*  (citing *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349-52 (Fed. Cir. 2016)). The specification of the '084 Patent confirms this conclusion:

- [T]he embodiments reside primarily in combinations of apparatus components and processing steps related to implementing a system and method for managing digital images. Accordingly, ***the system and method components have been represented*** where appropriate ***by conventional symbols in the drawings, showing only those specific details that are pertinent to understanding the embodiments*** of the present invention so as not to obscure the disclosure with details that will be ***readily apparent to those of ordinary skill in the art*** having the benefit of the description herein. Dkt. 1-1 at Col. 3, lines 32–41 (emphasis added).

- ***Imaging systems*** 130 can ***acquire imagery*** of vehicles 120 passing through the location 110A, 110B. The ***imagery can include individual images, or a collection of images in Video imagery.*** An ***image recognizer*** 140 can identify individual ones of the vehicles 120 such that an elapsed time between the identified individual ones of the vehicles 120 in the captured imagery at the different locations 110 can be used to ***determine a rate of travel (speed) by a processor*** 300 for each of the identified individual ones of the vehicles 120. *Id.* at Col. 4, lines 4–12 (emphasis added); *see also id.* at Fig. 1.

- The ***server*** 210 and the ***data store*** 250 may be accessed by a law enforcement agency 280 via the ***communications network*** 220 and the citation signal may be generated and sent to a law enforcement agency 280 by the ***host server*** 210. Multiple different ***Internet connected onboard navigation systems*** 260 can be communicatively coupled to the ***host server*** 210 over ***computer communications network*** 220. *Id.* at Col. 5, lines 7–15 (emphasis added).

- ***[I]mage recognition is performed by a processor*** at an ***image capture device.*** Alternatively, the ***images captured by image capture devices may be transmitted to a central processor that performs image recognition*** on the various images captured by the image capture devices. *Id.* at Col. 5, lines 53–57 (emphasis added).

- ***Image recognition may be achieved by applying an image recognition algorithm*** to a first image to produce a first result, applying the image recognition algorithm to a second image to produce a second result, and by comparing the first and second results to determine if the same vehicle is in both images. *Id.* at Col. 5, lines 57–63 (emphasis added).

- The ***central processor*** may also ***compute a speed*** of a vehicle and ***generate a citation signal*** when the speed of the vehicle exceeds a speed limit. *Id.* at Col. 5, lines 63–65 (emphasis added).

- The citation signal may be a ***data signal*** . . . *Id.* at Col. 5, line 65 (emphasis added).

- In a preferred embodiment, the invention is implemented in ***software, which includes but is not limited to firmware, resident software, microcode,*** and the like. *Id.* at Col. 7, lines 24–26 (emphasis added).

- Furthermore, the invention can take the form of a ***computer program product accessible from a computer-usable or computer readable medium providing program code for use by or in connection with a computer or any instruction execution system.*** *Id.* at Col. 7, lines 26–31 (emphasis added).

- For the purposes of this description, ***a computer-usable or computer readable medium can be any apparatus that can contain, store, communicate, propagate, or transport the program for use by or in connection with the***

> ***instruction execution system, apparatus, or device.*** The ***medium can be an electronic, magnetic, optical, electromagnetic, infrared, or semiconductor system*** (or apparatus or device). Examples of a computer-readable medium include a semiconductor or Solid state memory, magnetic tape, a removable computer diskette, a random access memory (RAM), a read-only memory (ROM), a rigid magnetic disk and an optical disk. Current examples of optical disks include compact disk-read only memory (CD-ROM), compact disk-read/write (CD-R/W) and DVD. *Id.* at Col. 7, lines 32–45 (emphasis added).

- ***A data processing system suitable for storing and/or executing program code will include at least one processor coupled directly or indirectly to memory elements through a system bus.*** The memory elements can include local memory employed during actual execution of the program code, bulk storage, and cache memories which provide temporary storage of at least some program code in order to reduce the number of times code must be retrieved from bulk storage during execution. *Id.* at Col. 7, lines 46–54 (emphasis added).

- ***Input/output or I/O devices*** (including but not limited to ***keyboards, displays, pointing devices, etc.)*** can be ***coupled to the system either directly or through intervening I/O controllers.*** *Id.* at Col. 7, lines 54–56 (emphasis added).

- ***Network adapters*** may also be coupled to the system to ***enable the data processing system to become coupled to other data processing systems or remote printers or storage devices through intervening private or public networks. Modems, cable modem and Ethernet cards are just a few of the currently available types of network adapters.*** *Id.* at Col. 7, lines 56–62 (emphasis added).

Similar to the claims in *Alice,* the claims of the '084 Patent merely require generic computer implementation of human-performable methods and fail to transform the abstract idea into a patent-eligible invention. *Alice*, 573 U.S. at 221; *see also Gottschalk v. Benson,* 409 U.S. 63, 65 (1972) ("The mathematical procedures can be carried out in existing computers long in use, no new machinery being necessary [a]nd, as noted, they can also be performed without a computer."); *Elec. Power,* 830 F.3d at 1355 ("Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information."); *Hawks Tech.*, 60 F.4th at 1359 ("'[M]erely reciting an abstract idea performed on a set of generic computer

components, as [the claims] do[ ] here, would not contain an inventive concept.'" (quoting *Two-Way Media*, 874 F.3d at 1337 (internal quotations omitted)).

The claims of the '084 Patent are directed to the abstract idea of collecting information, analyzing it, and displaying certain results of the collection and analysis without any inventive concept.  Therefore, the '084 Patent is invalid and unenforceable under § 101 and, accordingly, the Complaint should be dismissed.

### B.     Contiguity's Direct Infringement Allegations Fail to State a Claim

The Complaint fails to specifically identify which claims of the '084 Patent Jenoptik is accused of infringing. Instead, Contiguity generically alleges that "Defendants have been and continue to directly infringe **one or more claims** of the '084 Patent . . ."  Dkt. 1 at ¶ 12 (emphasis added). However, Contiguity attached a claim chart to the Complaint (Dkt. 1-2) that recites the language of independent claim 1 as an "Exemplary '084 Patent Claim[]." *Id.* ("[T]he Defendants' products identified in the charts attached hereto as Exhibit B . . . infringe **at least the exemplary claims** of the '084 Patent also identified in the charts incorporated into this Count below (the 'Exemplary '084 Patent Claims')") (emphasis added). Neither the Complaint nor the attached claim chart provide any reference to–let alone any factual allegations for–the remaining 15 claims of the '084 Patent.

The Court should dismiss the Complaint with regard to the alleged infringement of claim 1 of the '084 Patent because it fails to plausibly allege infringement as to every element of claim 1. The Court should further dismiss the Complaint to the extent it purports to include claims 2-16 of the '084 Patent, because Contiguity does not even attempt to allege any factual basis for infringement of any of these other claims.

"To prove literal infringement, the patentee must show that the accused device contains *each and every limitation* of the asserted claims." *SIMO Holdings Inc. v. Hong Kong uCloudlink*

*Network Tech. Ltd.*, 983 F.3d 1367, 1380 (Fed. Cir. 2021) (emphasis added). "If even one limitation is missing or not met as claimed, there is no literal infringement." *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1350 (Fed. Cir. 1999).

"[A]n allegation of direct patent infringement is insufficient under *Twombly* and *Iqbal* if it 'simply recit[es] some of the elements of a representative claim and then describe[s] generally how an accused product operates, without specifically tying the operation to any asserted claim or addressing all of the claim requirements.'" *VPR Brands, LP v. HQDTech USA LLC*, No. 21-cv-21678, 2021 WL 5013803, at *5 (S.D. Fla. Oct. 28, 2021) (Bloom, J.) (quoting *Glob. Tech. LED, LLC v. Every Watt Matters, LLC*, No. 15-cv-61933, 2016 WL 6682015, at *2 (S.D. Fla. May 19, 2016); *see also Thermolife Int'l, LLC v. Vitamin Shoppe, Inc.*, No. 0:16-cv-60693-UU, 2016 WL 6678525, at *2 (S.D. Fla. June 8, 2016) (applying *Iqbal/Twombly* and dismissing direct infringement claim). "[I]n applying *Twombly* and *Iqbal* . . . [plaintiff] must allege that [defendant's] product practices all the elements of at least one of the claims of the subject patent." *Id.* (quoting *Sunrise Techs., Inc. v. Cimcon Lighting, Inc.*, 219 F. Supp. 3d 260, 263 (D. Mass. 2016)).

### i. The Complaint Fails to Plausibly Allege Infringement of Every Element of Claim 1

Courts dismiss complaints at the pleading stage where a plaintiff has failed to plausibly allege infringement as to every element of at least one claim. *See e.g., Atlas IP, LLC v. JEA*, No. 17-20243-CIV, 2017 WL 5643312, at *5-8 (S.D. Fla. June 21, 2017) (granting motion to dismiss where plaintiff failed to plausibly allege how the accused product met two elements of the representative patent claim); *see also Raptor, LLC v. Odebrecht Constr., Inc.*, No. 17-21509-CIV, 2017 WL 3503399, at *3 (S.D. Fla. June 22, 2017) ("Plaintiffs fail to plead facts describing how

Defendants' conduct infringes each element or limitation of any of the Claims they allege were infringed. Plaintiffs therefore do not meet the pleading standard for direct infringement.").

In order for claim 1 of the '084 Patent to be infringed, an accused product must perform ***each and every one*** of the following steps:

> (1) acquiring first imagery of a plurality of vehicles at a first location at a first time;
>
> (2) acquiring second imagery of a plurality of vehicles at a second location at a second time;
>
> (3) identifying a first vehicle from the acquired first imagery and the acquired second imagery;
>
> (4) determining a speed of the first vehicle;
>
> (5) generating a citation signal when the speed of the first vehicle exceeds a predetermined speed; and
>
> (6) *attempting to transmit the citation signal to a device of a person associated with the vehicle*.

Dkt. 1-1 at Col. 8, lines 6-18 (emphasis added). Contiguity does not–and cannot–allege any facts showing that the accused products attempt to transmit the citation signal to a device of a person associated with the speeding vehicle. *See* Dkt. 1-2 at pgs. 9-11. The *only* allegation that Contiguity makes is that "the recorded image of the speeding vehicle (i.e., data) is transmitted *to police or authorities*." Dkt. 1-2 at pg. 10 (emphasis added). However, Contiguity cannot plausibly allege that transmission of data *to police or authorities* satisfies the claim requirement of attempting to transmit a citation signal *to a device of a person associated with the speeding vehicle*. Moreover, the very evidence that Contiguity cites in its claim chart proves that the accused products *never* send data to a device of a person associated with the speeding vehicle because "[t]he data is transmitted ***only*** to the police or the authorities." *Id.* (emphasis added). Therefore, Contiguity does not–and cannot–plausibly allege that the accused products attempt to transmit the citation signal to a device of a person associated with the speeding vehicle as required by claim 1.

16

ii.     **The Complaint Fails to Allege Any Factual Basis for Infringement of Claims 2-16**

Courts in this District dismiss complaints at the pleading stage to the extent the complaints contain vague allegations of infringement of unidentified and unpled claims. For example, in *Thermolife*, this Court dismissed a direct infringement claim with respect to claims 2 and 3 where the complaint vaguely alleged infringement of "one or more" claims of the asserted patent while only providing details as to infringement of claim 1. *Thermolife*, 2016 WL 6678525, at *2. The Court found that only detailing infringement for claim 1, while alleging infringement of "one or more" claims "does not give Defendants fair notice--or any notice at all--as to patent infringement claims based on claims 2 or 3 of the Patent, and this is woefully insufficient to 'raise a right to relief above the speculative level.'" *Id.* (citing *Iqbal* and *Twombly*).

Likewise, the Court in *Werteks*, rejected the plaintiffs' attempt to assert infringement of unidentified claims. 2016 WL 5076169. As in *Thermolife*, the complaint in *Werteks* only provided infringement allegations for claim 1, but alleged that "one or more" claims were infringed. *Id.* at *2. In granting defendant's motion to dismiss as to the unidentified claims, the Court held that:

> [Putting Defendants on notice "as to at least one claim alleged to be infringed"] is not the standard. The pleading standard set forth in Iqbal and Twombly requires more than the legal conclusion that the Defendants have infringed on claims 2 and 3 of the [asserted patent], and much more than notice that they may possibly have done so. The Plaintiffs are required to put forth facts that, at the very least, allow the Court to make a reasonable inference that the Defendants have infringed on claims 2 and 3. As the Plaintiffs concede they allege facts only as to claim 1, the Court is unable to make any such inference. Accordingly, the motion to dismiss Count I of the Complaint shall be granted as to claims 2 and 3 of the [asserted patent].

*Id.* at *3.

As in *Thermolife* and *Werteks*, the Contiguity's Complaint improperly fails to provide allegations relating to the remaining 15 unidentified claims of the '084 Patent and, instead, sweeps them into the vague allegation that "Defendants have been and continue to directly infringe ***one***

*or more claims* of the '084 Patent . . ." Dkt. 1 at ¶ 12 (emphasis added). The Court should dismiss the infringement allegations in the Complaint as to patent claims 2 – 16 of the '084 Patent.[4]

### C.      Contiguity's Induced Infringement Allegations Fail to State a Claim

The Complaint fails to state a claim for induced infringement because Contiguity has failed to (1) provide plausible allegations of direct infringement and (2) plead any facts alleging that Jenoptik had pre-suit knowledge of the '084 Patent – both of which are required for a claim of induced infringement.

#### i.      The Complaint Fails to Allege Any Factual Basis for Induced Infringement Because There is No Direct Infringement

"It is axiomatic that '[t]here can be no inducement or contributory infringement without an underlying act of direct infringement.'" *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012)). As set forth above, Contiguity has not plead a viable cause of action for direction infringement of the '084 Patent. Therefore, there can be no induced infringement of the '084 Patent as a matter of law and the induced infringement allegation must be dismissed.

#### ii.     The Complaint Fails to Allege That Jenoptik Had the Requisite Pre-Suit Knowledge of the '084 Patent for Induced Infringement

"To sustain a claim for inducing, contributory or willful infringement, a plaintiff must show, at a minimum, that the defendant had knowledge of the patent at issue." *Wi-Lan*, 2013 WL 12092486, at *3 (quoting *Global-Tech Appliances, Inc. v. SEB SA*, 563 U.S. 754, 765-66 (2011)).

---

[4] Alternatively, the Court should dismiss any direct infringement allegations as to patent claims 2 – 16 of the '084 Patent for at least the same reason as stated above with regard to claim 1. Contiguity has not, and cannot, allege direct infringement of independent claims 8 and 15 because, like claim 1, these claims also require "attempting to transmit[/communicate] the citation signal to a device of a person associated with the vehicle." Dkt. 1-1 at Claims 8 and 15. The remaining claims in the '084 Patent are dependent on claims 1, 8, or 15, and would therefore not be infringed for at least the same reasons as the independent claims from which they depend.

The Complaint does not allege that Jenoptik had knowledge of the '084 Patent prior to the filing of the Complaint. The Complaint only alleges that "*[t]he service of this Complaint* . . . constitutes actual knowledge of infringement as alleged here." Dkt. 1 at ¶ 14 (emphasis added). This Court has recognized that service of a complaint cannot impute the necessary knowledge for induced infringement onto a defendant; instead, a "[p]laintiff must [] allege that [d]efendants had *pre-suit* knowledge of the [patent] to sustain its claims for induced . . . infringement." *Wi-Lan*, 2013 WL 12092486, at *4 (granting motion to dismiss induced infringement claim) (emphasis added). "Specifically, the *Global-Tech* Court noted that to sustain a claim for induced infringement, the plaintiff must show that the defendant 'actively,' induced infringement, which connotes that the defendant must have been aware, at the time when it engaged in the conduct at issue, that its conduct constituted patent infringement." *Id.* (quoting *Global-Tech*, 563 U.S. at 760).

The *Wi-Lan* Court explained that service of a complaint cannot satisfy the knowledge requirement for a claim of induced infringement:

> since the provision of a complaint for patent infringement necessarily provides notice of that patent, a finding that the knowledge necessary to sustain a claim for contributory, induced or willful infringement was imputed onto a defendant at that juncture effectively transforms such service into a motion for a preliminary injunction. This is because receipt of a complaint would force a defendant to either cease in its activity which purportedly constituted infringement or face additional exposure to liability. Such a finding would also encourage inefficiency. Plaintiff must therefore allege that Defendants had pre-suit knowledge of the [patent at issue] to sustain its claims for induced, contributory or willful infringement.

*Id.* at *4. Other courts in this Circuit and around the country have similarly ruled that pre-suit knowledge of the asserted patent is required to sustain a claim for contributory infringement. *See e.g.,*, *Orlando Commc'ns LLC v. LG Elecs., Inc.*, No. 6:14-CV-1017-ORL-22, 2015 WL 1246500, at *8–9 (M.D. Fla. Mar. 16, 2015) (finding that "this Court has already unequivocally decided the issue" that pre-suit knowledge is required for an induced infringement claim); *D3D Techs., Inc. v. Microsoft Corp.*, No. 6:20-CV-1699-PGB-DCI, 2021 WL 2194601, at *3 (M.D. Fla. Mar. 22,

2021) ("[F]iling of a complaint does not satisfy the requirement of showing pre-suit knowledge of the patents or the infringing nature of the conduct.); *see also ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 252 (D. Del. 2021) (finding that "the operative complaint in a lawsuit fails to state a claim for indirect patent infringement where the defendant's alleged knowledge of the asserted patents is based solely on the content of that complaint or a prior version of the complaint filed in the same lawsuit" and collecting cases).

Contiguity does not–and cannot–allege that Jenoptik had pre-suit knowledge of the '084 Patent and the Complaint itself cannot provide the requisite knowledge for induced infringement. *Wi-Lan*, 2013 WL 12092486, at *4. Therefore, Contiguity's induced infringement claim must be dismissed.

**IV. CONCLUSION**

For the foregoing reasons, the '084 Patent is invalid under 35 U.S.C. § 101 and the Complaint fails to state plausible claims for direct and induced infringement. Accordingly, Jenoptik respectfully requests that the Court grant this motion and dismiss the Complaint with prejudice.

Dated: May 3, 2023                    Respectfully submitted,

By:   */s/Michael S. Golenson*
      Edward F. McHale (FBN: 190300)
      Andrew D. Lockton (FBN: 115519)
      McHALE & SLAVIN, P.A.
      2855 PGA Boulevard
      Palm Beach Gardens, Florida 33410
      Telephone: (561) 625-6575
      Facsimile: (561) 625-6572
      E-mail: litigation@mchaleslavin.com

      Michael S. Golenson (pro hac vice)
      MASUDA, FUNAI, EIFERT & MITCHELL, LTD.

20

203 N. LaSalle Street, Suite 2500
Chicago, Illinois 60601-1262
Telephone: (312) 245-7500
Facsimile: (312) 245-7467
E-mail: mgolenson@masudafunai.com

***Attorneys for Defendants JENOPTIK North America, Inc. and JENOPTIK Optical Systems, LLC***